1
2
3
4
5

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
*cbrancart@brancart.com*
Elizabeth Brancart (SBN 122092)
*ebrancart@brancart.com*
Post Office Box 686
Pescadero, CA 94060
Tel:    (650) 879-0141

6   Attorneys for Plaintiffs

7
8
9
10

LEGAL AID SOCIETY OF SAN DIEGO, INC.
 Hilary Schwartz (SBN 326009)
 *hilarys@lassd.org*
110 South Euclid Avenue,
San Diego, California 92114
Tel:    (619) 471-2613

11   Attorney for Plaintiff Basilides Cuevas Leon

12
13
14

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CSA OF SAN DIEGO, INC,
SERGIO VALDERRAMA,
JAVIER GARCIA, MARIA
GONZALEZ, MARIA AVILA,
PATRICIA GUTIERREZ,
MARIA VILLICANA, HÉCTOR
OSORIO, MATILDE SAENZ,
and BASILIDES LEON,**

        **Plaintiffs,**

    **vs.**

**BROADPOINT PROPERTIES,
INC., JAVIER ZAVALA,
MELISSA ZAVALA, individually
and as designated corporate
officer/broker of Broadpoint
Properties, Inc.,  AWNI
BATHISH and HIAM BATHISH,
individually and as trustees of the
Bathish Revocable Living Trust,**

        **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case:** '23CV2070 LAB AHG

**COMPLAINT**

1.     Plaintiffs – tenants and a local fair housing agency – sue the owners and managers of the Villa Bella Apartments located in Oceanside, California for violation of the federal Fair Housing Act and related state laws as follows:

## I.  JURISDICTION AND VENUE

2.     Subject matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613 in that the claims alleged herein arise under the Fair Housing Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper under 28 U.S.C. § 1391 in that the claims alleged herein arose within the Southern District of California.

## II.  PARTIES

4.     Plaintiff CSA San Diego (CSA) is a nonprofit corporation organized under the laws of the State of California with its principal place of business located in El Cajon, California. CSA's mission is to promote social justice and public welfare through programs, services, and advocacy against all forms of discrimination and harassment and the eradication of housing discrimination.

5.     Plaintiffs Sergio Valderrama, Javier Garcia, Maria Gonzalez Garcia, Maria Avila, Patricia Gutierrez, Maria Villicana, Hector Osorio, Matilde Saenz, and Basilides Leon are tenants who rent and occupy dwelling units at the Villa Bella Apartments located in Oceanside, California. They are collectively referred to as the individual plaintiffs.

6.     Since 2004, defendants Awni Bathish and Hiam Bathish, husband and wife, have owned the Villa Bella Apartments. In 2013, Awni and Hiam Bathish quit-claimed title to the Villa Bella Apartments to the Bathish Revocable Living Trust. They are named in their capacities as individuals and as trustees of the

1  Bathish Revocable Living Trust.  These defendants are collectively referred to as
2  the Bathishes.

3         7.    Since June 1, 2023, defendant Broadpoint Properties, Inc.
4  (Broadpoint), a California corporation located in Escondido, has managed the
5  Villa Bella Apartments. Founded in 2008, Broadpoint is owned and operated by
6  defendants Melissa Zavala and Javier Zavala, wife and husband. The California
7  Department of Real Estate (DRE) licensed Broadpoint as a corporate real estate
8  firm in 2008; Melissa Zavala is Broadpoint's designated officer-broker.  DRE
9  licensed Melissa Zavala as a real estate salesperson in 2001 and as a real estate
10  broker in 2007.  DRE licensed  Javier Zavala as a real estate salesperson in 2001.
11  These defendants are collectively referred to as Broadpoint.

12         8.    Each defendant is the agent, principal, or co-conspirator of every
13  other defendant. Each defendant is directly or viciously liable for each violation of
14  federal and state statutes alleged in this complaint.

15  **III.  FACTUAL ALLEGATIONS**
16  **A.  The Individual Plaintiffs**
17  ***1. The Valderrama Household, Unit 4***

18         9.    Sergio Valderrama, age 45, has occupied unit 4 at the Villa Bella
19  Apartments since at least 2010 with his wife, Elsa Sanjines, his 14-year-old
20  daughter, and his adult son. Valderrama is Latino. His household speaks both
21  English and Spanish. His household is low-income.

22        10.    On May 1, 2022, Valderrama executed a rental agreement provided
23  by Awni Bathish and Hiam Bathish, as landlords.  That agreement acknowledged
24  that more than two persons occupied the dwelling, that the monthly rent was $875,
25  and that the Bathishes "were responsible for the payment of all utilities and
26  services."

27        11.    In spite of that agreement, the Bathishes charged and collected $925
28  in rent per month starting May 2022 and an additional $100 per month for water

service. Other increases rapidly followed.  In June 2022, the Bathishes increased Valderrama's monthly rent to $1,000, and in August 2022, they hiked the monthly water service charge to $125. At some point, the Bathishes started changing Valderama an additional $60 per month for a second parking space.

12.     Throughout Valderrama's tenancy, the Bathishes failed to maintain Unit 4 in a habitable condition, including a pest infestation, ceiling holes, defective cabinets and countertops, a broken wall heater, and water intrusion causing mold.

13.     Within days of assuming management,  on June 13, 2023, Broadpoint notified Valderrama that it was increasing his monthly rent to $1,100, effective August 1, 2023.

14.     Then, on July 17, 2023, Broadpoint demanded that Valderrama execute Broadpoint's Standard, English-only, 59+ page Rental Agreement.  In addition to imposing unlawful terms and conditions, discussed below, the new Broadpoint Agreement repeated the monthly rent increase to $1,100 and added other monthly fees and charges. Starting August 1, 2023, defendants charged the household $115 for parking, $150 per month for a "utility fee," and other charges discussed below. Broadpoint told Valderrama that his  household could either sign the new Broadpoint Agreement or vacate their home. Valderrama signed on August 4, 2023, so that his family would not be homeless.

15.     But, on October 31, 2023, Broadpoint served a 60-day no-fault notice on  Valderrama, terminating his family's tenancy and threatening them with eviction. The sole basis for that eviction notice was the assertion by defendants that – after years of failing or refusing to repair and maintain Unit 4 in a habitable condition – defendants must now oust the family from their home so that the unit can be remodeled and rented to new tenants at a higher rental rate.

16.     The Valderrama family lacks the resources to secure comparable alternative housing by December 31, 2023, the deadline for them to vacate or face

1  eviction.

2  ### *2. The Garcia Household, Unit 5*

3  17.    Javier Garcia, age 40, has occupied unit 5 at the Villa Bella

4  Apartments since at least 2019. Garcia occupies unit 5 with his partner, Pilar

5  Amaya, and her 15-year-old son. Garcia is Latino and his primary language is

6  Spanish. His household is low-income.

7  18.    On May 1, 2022, Garcia executed a rental agreement provided by the

8  Bathishes.  That agreement acknowledged that more than two persons occupied

9  the dwelling, that monthly rent was $875, and that the Bathishes "were responsible

10  for the payment of all utilities and services."

11  19.    In spite of that agreement, the Bathishes charged and collected $925

12  in rent per month starting May 2022 and an additional $100 per month for water

13  service. Other increases rapidly followed. In June 2022, the Bathishes increased

14  Garcia's monthly rent to $1,000, and in August 2022, they hiked the monthly

15  water service charge to $125.

16  20.    Within days of assuming management, on June 13, 2023,  Broadpoint

17  served an English-only notice on Garcia increasing his monthly rent to $1,100,

18  effective August 1, 2023.

19  21.    Then, on July 17, 2023, Broadpoint demanded that Garcia execute

20  Broadpoint's Standard, English-only, 59+ page Rental Agreement.  The new

21  Broadpoint Agreement repeated the monthly rent increase to $1,100, and added

22  other monthly fees and charges. Starting August 1, 2023, defendants charged the

23  household $40 for one parking space, $150 per month as a "utility fee," and other

24  charges discussed below.  Broadpoint told Garcia that his  household could either

25  sign the new Broadpoint Agreement or vacate their home. Garcia signed on July

26  22, 2023, so that his family would not be homeless.

27  22.    But, on October 31, 2023, Broadpoint served a 60-day, no-fault

28  notice on Garcia terminating his family's tenancy and threatening them with

eviction.   The sole basis for that eviction notice was the assertion by the
defendants that – after years of failing or refusing to repair and maintain Unit 5 in
a habitable condition – defendants must now oust the family from their home so
that the unit can be remodeled and rented to new tenants at a higher rental rate.

23.     Although Broadpoint speaks to Garcia in Spanish, it provides him
with documents that he can neither read nor understand.

24.     The Garcia  family lacks the resources to secure comparable
alternative housing by December 31, 2023, the deadline for them to vacate or face
eviction.

### 3.  The Gonzalez Household, Unit 7

25.     Plaintiff Maria Gonzalez, age 36, has rented and occupied unit 7 at
the Villa Bella Apartments since 2020 with her children, now ages 12, 16, and 18.
She is Latina and her primary language is Spanish. Her 18-year-old son is
disabled.  Gonzalez's household is low-income.

26.     On September 1, 2020, Gonzalez executed a rental agreement
provided by the Bathishes. That agreement acknowledged that more than two
persons occupied the dwelling, that monthly rent was $925, and that the Bathishes
"were responsible for the payment of all utilities and services."

27.     After 2020 Gonzalez's monthly rent rapidly increased, and monthly
utility bills were introduced and quickly raised. Between at least June 2021 and
June 2022, Gonzalez's rent was $925 per month, plus an additional $100 per
month for water service. Starting June 2, 2023, the Bathishes increased the
monthly rent to $1,000, and by January 2023, the Bathishes increased the monthly
water charge to $125.

28.     Throughout Gonzalez's tenancy, the Bathishes failed to
 maintain Unit 7 in a habitable condition, including a pest infestation, wall holes, a
defective tub, and water intrusion causing mold.

29.     On July 17, 2023, Broadpoint demanded that Gonzalez execute

Broadpoint's Standard, English-only, 59+ page Rental Agreement.  The
Broadpoint Agreement raised the monthly rent to $1,100 and added other monthly
fees and charges. Starting August 1, 2023, defendants charge the household $40
for one parking space, $150 per month as a "utility fee," and other charges
discussed below.

30.     Then, two days later, on July 19, 2023, Broadpoint served a 60-day,
no-fault notice on Gonzalez terminating her family's tenancy and threatening them
with eviction. The sole basis for that eviction notice was the assertion by the
defendants that – after years of failing or refusing to repair and maintain Unit 5 in
a habitable condition – defendants now must oust the family from their home so
that the unit can be remodeled and rented to new tenants at a higher rental rate.

31.     Unable to find comparable, alternative housing by the end of August,
Gonzalez called Broadpoint and asked if her family could transfer to Unit 6 in the
Villa Bella Apartments, which was vacant. A Broadpoint staffer responded in
Spanish, stating that Gonzalez would have to apply for Unit 6 as if she were a new
tenant.

32.     On September 5, Broadpoint emailed Gonzalez about renting Unit 6.
The email was written entirely in English and attached several English-only
documents. Although Gonzalez was unable to read the terms of these documents,
she was able to translate enough of the text to determine that Broadpoint intended
to charge $1,700 in rent for Unit 6 and imposed qualification standards that her
family could not meet.

33.     On September 12, 2023, Gonzales wrote to Broadpoint and requested
additional time to vacate the family's home and avoid homelessness.  Melissa
Zavala responded in Spanish on September 13, 2023:

> I know that you spoke with Javier from the office and I understand that you
> are going to pay the rent for September and you are going to leave by the
> end of October. I left a document at reception for you to sign when you go

to pay the rent. You will receive an income credit for October. You have to pay the rent before 4 on Friday, September 15. If you have questions, don't hesitate to call us.

34.     Gonzalez traveled to the Broadpoint offices on September 13, 2023, to pay her rent.  Broadpoint staff presented Gonzalez with an English-only document, entitled Addendum 1:

> Tenant has requested an extension on the Notice of Termination of Tenancy. The tenancy was scheduled to terminate on 9/30/23. However, tenant has requested a reasonable accommodation of 30 days due to a disabled son, who is also a resident. Tenant agrees to pay September rent of $1100 and the utility fee of $150 on or before 10/31/23. All parties acknowledge that no further extensions will be provided.

The Broadpoint staffer gave Gonzalez two choices: either she signed Addendum 1 or her family would face eviction in a few weeks. Speaking in Spanish, Gonzalez protested that she didn't read or speak English and would not sign a document that she could not read. Gonzalez then tendered her rent, which the Broadpoint staffer refused to accept, telling Gonzalez, in Spanish, that Broadpoint would not accept her rent unless she signed the English-only Addendum 1.

35.     Gonzalez contacted CSA for help and CSA advised Gonzalez to return to Broadpoint and make a second attempt to pay her rent, which she did on September 15. At this meeting, the Broadpoint staffer accepted Gonzalez's rent, but warned Gonzalez, speaking in Spanish, that if Gonzalez refused the sign the English-only Addendum 1 that "the sheriff was going to go to her unit and force her out and that she would be in a lot of trouble and would have to go to court and that it would be in her record," or words to that effect.

36.     Since October 20, 2023, Broadpoint has harassed Gonzalez to vacate her home. By November Javier Zavala had escalated Broadpoint's threats, telling Gonzalez, in Spanish, that Broadpoint would disconnect water and electricity to her family's home unless they vacated immediately.

37.     Although Broadpoint speaks to Gonzalez in Spanish, it provides her with English-only documents that she can neither read nor understand.

### *4. The Avila Household, Unit 8*

38.     Plaintiff Maria Avila, age 58, has lived at Villa Bella since at least 2015. She first lived in unit 7 with her adult daughter, then transferred to unit 8 around 2018. Her household includes her husband, Lazaro Trinidad. Avila is Latina, and her primary language is Spanish. Both Avila and her husband are disabled. Avila's household is low-income.

39.     On August 1, 2021[1], Avila executed a rental agreement provided by the Bathishes.  That agreement stated that the monthly rent was $925 and that the Bathishes "were responsible for the payment of all utilities and services." The Bathishes, however, immediately started charging Avila $100 per month for water service.  In July 2022, the Bathishes increased Avila's monthly rent to $1,000 and her monthly water charge to $125.

40.     Throughout Avila's tenancy, the Bathishes failed to maintain Unit 8 in a habitable condition, including a pest infestation and water intrusion causing mold.

41.     Avila is disabled. She suffers from mobility impairments and uses a wheelchair. Climbing stairs is especially difficult for her, a condition that has worsened with age. Unit 8 is located on the second floor of the Villa Bella Apartments and can only be accessed by climbing stairs.

42.     Avila regularly attends PACE San Diego, an adult care program, which assists Avila with day-to-day tasks that she cannot perform because of her disability, such as showering.

43.     On April 24, 2023, PACE San Diego prepared a reasonable accommodation letter for Avila to deliver to her landlord. The letter requested that

---

[1]The date on this agreement is unclear. A copy was retrieved by Avila from records in Broadpoint's possession that it makes available to tenants through its web portal.

Avila be permitted to occupy a unit on the first floor of the Villa Bella apartments to ameliorate the effects of her disability. Avila delivered the letter to the manager of Villa Bella, who gave the letter to the Bathishes. The Bathishes refused to grant Avila's request.

44. Within days of assuming management, on June 13, 2023, Broadpoint served an English-only notice on Avila increasing her monthly rent to $1,100, effective August 1, 2023.

45. In July 2023, Avila traveled to Broadpoint's office to pay her rent. During that meeting, Avila verbally renewed her request to be relocated to a first-floor unit to reasonably accommodate her mobility disability. The Broadpoint staff told Avila that before Broadpoint would consider her request she had to agree to pay the new tenant rate – $1,700 per month in rent – if she were permitted to transfer to a first-floor unit.

46. Meanwhile, on July 17, 2023, Broadpoint demanded that Avila execute Broadpoint's Standard, English-only, 59+ page Rental Agreement. In addition to imposing unlawful terms and conditions, discussed below, the new Broadpoint Agreement repeated the monthly rent increase to $1,100 and added other monthly fees and charges. Starting August 1, 2023, defendants charged the household $40 for their parking space, $150 per month for a "utility fee," and other charges discussed below. Broadpoint told Avila that her household could either sign the new Broadpoint Agreement or vacate their home.

47. On July 26, 2023, Avila reported to PACE San Diego that Broadpoint had denied her request to be moved to a first floor unit, and that Broadpoint had conditioned a move to a first floor unit on Avila agreeing to pay $1,700 in monthly rent and $150 in monthly utility fees, and on Avila's ability to pay both a security deposit and first month's rent for the unit. Avila could not afford to pay these costs or fees.

48. In September 2023 Avila traveled to the Broadpoint office to pay her

1   rent.  At that meeting, Broadpoint staff presented Avila with Broadpoint's
2   Standard, English-only, 59+ page Rental Agreement and demanded that Avila
3   execute the agreement. Avila protested, complaining in Spanish that she did not
4   read English.  The Broadpoint staff replied, in Spanish, that Avila had to sign the
5   agreement as present or her tenancy would be terminated. Avila asked for a copy
6   so that others could interpret the agreement for her. The Broadpoint staffer
7   refused, telling Avila that if she wanted a copy of the agreement, she had to access
8   a PDF file of the document using Broadpoint's app. Avila does not know how to
9   use the app and has never downloaded it. Avila signed the agreement on
10  September 1, 2023, so that her family would not be homeless.

11      49.    But, on October 31, 2023, Broadpoint served a 60-day, no-fault
12  notice on Avila terminating her family's tenancy and threatening them with
13  eviction. The notice was in English only. The sole basis for that eviction notice
14  was the assertion by defendants that – after years of failing or refusing to repair
15  and maintain Unit 8 in a habitable condition – defendants now must oust the
16  family from their home so that the unit can be remodeled and rented to new
17  tenants at a higher rental rate.

18      50.    Although Broadpoint speaks to Avila in Spanish, it provides her with
19  English-only documents that she can neither read nor understand.

20      51.    The Avila household lacks the resources to secure comparable
21  alternative housing by December 31, 2023, the deadline for them to vacate or face
22  eviction.

23              *5. The Gutierrez Household, Unit 10*

24      52.    Plaintiff Patricia Gutierrez, age 43, has occupied unit 10 since at least
25  2018 with her minor son and adult daughter. Gutierrez is Latina. Her household
26  speaks Spanish. Her household is low-income.

27      53.    In June of 2023, the Bathishes charged Gutierrez $1,000 for
28  rent, and $125 for utilities.

54.     Throughout Gutierrez's tenancy, the Bathishes failed to maintain Unit 10 in a habitable condition, including a pest infestation and water intrusion causing mold.

55.     Within days of assuming management, on June 13, 2023, Broadpoint notified Gutierrez that it was increasing her monthly rent to $1,100 effective August 1, 2023.

56.     Then, on July 17, 2023, Broadpoint demanded that Gutierrez execute Broadpoint's Standard, English-only, 59+ page Rental Agreement. In addition to imposing unlawful terms and conditions, discussed below, the new Broadpoint Agreement repeated the monthly rent increase to $1,100 and added other monthly fees and charges. Starting August 1, 2023, defendants charge the household $40 for parking, $150 per month for a "utility fee," and other charges discussed below. Broadpoint told Gutierrez that her household could either sign the new Broadpoint Agreement or vacate their home. Gutierrez signed on July 20, 2023, so that her family would not be homeless.

57.     But, on October 31, 2023, Broadpoint served a 60-day, no-fault notice on Gutierrez terminating her family's tenancy and threatening them with eviction. The sole basis for that eviction notice was the assertion by the defendants that – after years of failing or refusing to repair and maintain Unit 10 in a habitable condition – defendants now must oust the family from their home so that the unit can be remodeled and rented to new tenants at a higher rental rate.

58.     The Gutierrez family lacks the resources to secure comparable alternative housing by December 31, 2023, the deadline for them to vacate or face eviction.

### *6. The Villicana Household, Unit 11*

59.     Plaintiff Maria Villicana, age 32, has occupied unit 11 at the Villa Bella Apartments since at least 2022 with her two sons, ages 10 and 14. Villicana is Latina. Her household speaks English. Her household is low-income.

-12-

60.     On March 1, 2022, Villicana executed a rental agreement provided by the Bathishes. The agreement acknowledged that more than two persons occupied the dwelling, that the monthly rent was $1,000, and that monthly utility payments were $100 per month.

61.     In spite of that agreement, the Bathishes charged and collected $1,000 per month starting March 2022, and an additional $125 per month for water service starting June 2022.

62.     Throughout Villicana's tenancy, the Bathishes failed to maintain Unit 11 in a habitable condition, including a pest infestation and water intrusion causing mold.

63.     Within days of assuming management, on June 13, 2023, Broadpoint notified Villicana that it was increasing her monthly rent to $1,100 effective August 1, 2023.

64.     Then, on July 17, 2023, Broadpoint demanded that Villicana execute Broadpoint's Standard, English-only, 59+ page Rental Agreement. In addition to imposing unlawful terms and conditions, discussed below, the new Broadpoint Agreement repeated the monthly rent increase to $1,100 and added other monthly fees and charges. Starting August 1, 2023, defendants charge the household $40 for parking, $150 per month for a "utility fee," and other charges discussed below. Broadpoint told Villicana  that her household could either sign the new Broadpoint Agreement or vacate their home. Villicana signed on July 20, 2023, so that her family would not be homeless.

65.     But, on October 31, 2023, Broadpoint served a 60-day, no-fault notice on Villicana terminating her family's tenancy and threatening them with eviction. The sole basis for that eviction notice was the assertion by the defendants that – after years of failing or refusing to repair and maintain Unit 11 in a habitable condition – defendants now must oust the family from their home so that the unit can be remodeled and rented to new tenants at a higher rental rate.

66.     The Villicana family lacks the resources to secure comparable alternative housing by December 31, 2023, the deadline for them to vacate or face eviction.

### 7. The Osorio Household, Unit 13

67.     Plaintiff Hector Osorio, age 49, has occupied unit 13 at the Villa Bella Apartments since at least 2018. Osorio occupies his unit with his wife, Fabiola Gonzalez, and their minor children, ages 15, 6, and 4. Osorio is Latino and his primary language is Spanish. His household is low-income.

68.     On May 1, 2022, Osorio executed a rental agreement provided by the Bathishes. The agreement acknowledged that more than two persons occupied the dwelling, that the monthly rent was $925, and that the monthly utility payments were $125 per month.

69.     In spite of that agreement, the Bathishes charged and collected $1,000 in rent per month starting June 2022 and an additional $100 per month for water service.

70.     Throughout Osorio's tenancy, the Bathishes failed to maintain Unit 13 in a habitable condition, including a pest infestation, damaged walls, a defective stove and power source, and water intrusion causing mold.

71.     Within days of assuming management, on June 13, 2023, Broadpoint notified Osorio that it was increasing his monthly rent to $1,100, effective August 1, 2023.

72.     On June 20, 2023, Osorio's household attempted to pay their utilities bill via Broadpoint's app, which Broadpoint had encouraged them to use. On June 23, 2023, Broadpoint claimed that it could not access the family's account, and billed the family $25.

73.     Then, on July 17, 2023, Broadpoint demanded that Osorio execute Broadpoint's Standard, English-only, 59+ page Rental Agreement. In addition to imposing unlawful terms and conditions, discussed below, the new Broadpoint

Agreement repeated the monthly rent increase to $1,100, and added other monthly fees and charges. Starting August 1, 2023, defendants charged the household $40 for parking, $150 per month for a "utility fee," and other charges discussed below. Broadpoint told Osorio that his household could either sign the new Broadpoint Agreement or vacate their home. Osorio signed on July 24, 2023, so that his family would not be homeless.

74.   But, on October 31, 2023, Broadpoint served a 60-day, no-fault notice on Osorio, terminating his family's tenancy and threatening them with eviction. The sole basis for that eviction notice was the assertion by the defendants that – after years of failing or refusing to repair and maintain Unit 13 in a habitable condition – defendants must now oust the family from their home so that the unit can be remodeled and rented to new tenants at a higher rental rate.

75.   Although Broadpoint speaks to Osorio in Spanish, it provides him with English-only documents that he can neither read nor understand.

76.   On October 30, 2023, Broadpoint charged the Osorio family an "admin fee" of $18.50 for "sending contract multiple times." Broadpoint issued the family a receipt claiming that the fee is "in tenant handbook"; the tenant handbook signed by Osorio does not include any fee in the amount of $18.50.

77.   The Osorio family lacks the resources to secure comparable alternative housing by December 31, 2023, the deadline for them to vacate or face eviction.

### 8. The Saenz Household, Unit 14

78.   Plaintiff Matilde Saenz, age 37, has lived at the Villa Bella Apartments since at least 2019 with her two minor children, ages 15 and 16. Saenz first moved into unit 9, and then, after a few months, transferred to unit 14. Saenz is Latina, and she speaks both English and Spanish. Her household is low-income.

79.   On December 1, 2022, Saenz executed a rental agreement provided by the Bathishes. That agreement acknowledged that more than two persons

1  occupied the dwelling, that the monthly rent was $900, and that the monthly

2  utilities payment was $75.

3      80.    In spite of that agreement, the Bathishes charged and collected $1,000

4  in rent starting February 2022 and an additional $125 per month for water service.

5      81.    On July 17, 2023, Broadpoint demanded that Saenz execute

6  Broadpoint's Standard, English-only, 59+ page Rental Agreement. In addition to

7  imposing unlawful terms and conditions, discussed below, the new Broadpoint

8  Agreement included a monthly rent increase to $1,100, and other monthly fees and

9  charges. Starting August 1, 2023, defendants charged the household $40 for

10 parking, $150 per month for a "utility fee," and other charges discussed below.

11 Broadpoint told Saenz that her household could either sign the new Broadpoint

12 Agreement or vacate their home. Saenz signed on July 25, 2023, so that her family

13 would not be homeless.

14     82.    Then, just two days later, on July 19, 2023, Broadpoint served a

15 60-day, no-fault notice on Saenz terminating her family's tenancy and threatening

16 them with eviction. The sole basis for that eviction notice was the assertion by the

17 defendants that – after years of failing or refusing to repair and maintain Unit 13 in

18 a habitable condition – defendants must now oust the family from their home so

19 that the unit can be remodeled and rented to new tenants at a higher rental rate.

20     83.    The Saenz family lacked the resources to secure comparable

21 alternative housing by September 30, 2023, the deadline for them to vacate or face

22 eviction.

23     84.    During her search for housing, Saenz called Broadpoint and asked if

24 she could apply for one of the recently renovated units in the building. Broadpoint

25 told Saenz that she could not apply because her household includes three persons,

26 and Villa Bella has an occupancy restriction of two persons per dwelling.

27     85.    Saenz contacted CSA for help and CSA advised Saenz to attempt to

28 pay rent, which she did on October 13, 2023.

86.   On Friday, October 20, Saenz received a text message from Broadpoint's phone number. The message said that Broadpoint would not accept her rent, and instructed her to return to Broadpoint's office to pick it up. That same day, Saenz received an email from Melissa Zavala stating that Broadpoint would not accept Saenz's rent.

### 9. The Leon Household, Unit 15

87.   Plaintiff Basilides Leon, age 51, has occupied unit 15 since 2015. Leon's daughters, while they were minors, lived with Leon during his tenancy, but they do not currently reside at the property. Leon is currently the only member of his household and the only occupant of unit 15. Leon is Latino, and his primary language is Spanish. Leon is disabled. His household is low-income.

88.   In 2015, Leon executed a rental agreement provided by the Bathishes. The agreement acknowledged that more than two persons occupied the dwelling and that monthly rent was $750. It does not state the monthly utilities payment owned by Leon, if any. A portion of the agreement is written in Spanish.

89.   After 2015 Leon's monthly rent raised each year, and monthly utility bills were introduced. In May 2022, Leon executed a rental agreement provided by the Bathishes. The agreement acknowledged that more than two persons could occupy the unit, that monthly rent was $875, and that the monthly utilities payment was $100.

90.   In spite of that agreement, by August 2022 the Bathishes charged and collected $1,000 in rent and $125 for monthly utility payments from Leon.

91.   Within days of assuming management, on June 13, 2023, Broadpoint served an English-only notice on Leon, increasing his monthly rent to $1,100, effective August 1, 2023.

92.   Leon suffers from diabetes and, over time, has lost his vision. He now struggles to safely climb the stairs to unit 15, which is on the second floor

of the Apartments.

93.     Throughout Leon's tenancy, the Bathishes failed to maintain Unit 15 in a habitable condition, including a pest infestation, ceiling and wall holes, defective cabinets, a broken stove, and water intrusion causing mold.

94.     After Broadpoint assumed management of the property, it instructed Leon to request repairs to his unit via Broadpoint's app. Leon is unable to request repairs because his disability precludes him from using Broadpoint's app.

95.     On June 28, 2023, Leon contacted the Legal Aid Society of San Diego (LASSD) and asked for help requesting a reasonable accommodation; specifically, that he be allowed to transfer to a downstair unit because of his disability.

96.     On or around July 20, 2023, Broadpoint demanded, via email, that Leon execute Broadpoint's standard, English-only, 59+ page Rental Agreement. In addition to imposing unlawful terms and conditions, discussed below, the new Broadpoint Agreement repeated the monthly rent increase to $1,100, and added other monthly fees and charges. Starting August 1, 2023, defendants charged Leon $40 for parking, $150 per month for a "utility fee," and other charges discussed below. Leon was unable to read these emails due to his limited vision, and was not aware of their existence. He did not know about the existence of the Rental Agreement. Leon did not sign the new Rental Agreement.

97.     Nevertheless, Broadpoint proceeded as though Leon *did* sign the lease, charging him $1,100 for rent and $40 for parking in August, and charging him $1,100 for rent, $40 for parking, and $150 for utilities in September.

98.     On July 31, 2023, Broadpoint served a no-fault notice on Leon, terminating his tenancy and threatening him with eviction if he did not vacate his home by November 30, 2023. The sole basis for that eviction notice was the assertion by the defendants that – after years of failing or refusing to repair and

-18-

maintain Unit 15 in a habitable condition – defendants now must oust Leon from their home so that the unit can be remodeled and rented to new tenants at a higher rental rate.

99.   On August 3, 2023, LASSD submitted a reasonable accommodation request to Broadpoint on behalf of Leon and asked that he be allowed to transfer to a vacant unit on the first floor. LASSD also reported habitability concerns in Leon's apartment, including a pest infestation and mold in his bathroom. LASSD requested that all documents distributed to Leon via email be sent to LASSD.

100.   Broadpoint denied Leon's request, and conditioned his transfer to a new unit on Leon paying $1,550 for rent, a sum that Leon cannot afford on social security payments, which are his only source of income.

101.   Broadpoint continues to illegally charge Leon pursuant to the terms of an agreement that Leon did not sign.

102.   Leon lacks the resources to secure comparable alternative housing by November 30, 2023, the deadline for him to vacate or face eviction.

103.   Although Broadpoint speaks to Leon in Spanish, it provides him with English-only documents that he can neither read nor understand.

**B.  CSA of San Diego**

104.   CSA's mission is to promote social justice and public welfare through programs, services, and advocacy against all forms of discrimination, and specifically, the eradication of housing discrimination.  Pursuant to that mission, CSA seeks the elimination of all forms of national origin discrimination in housing. To advance that goal, CSA (1) investigates allegations of discrimination or harassment, (2) counsels victims of discrimination or harassment about their fair housing rights, (3) takes steps to counteract the effects of discrimination or harassment, and (4) provides education and outreach to the community regarding fair housing.

105.   Each of the individual plaintiffs contacted CSA and complained about

Bathishes and Broadpoint's unlawful behavior. CSA counseled each about their fair housing rights. It also investigated Bathishes and Broadpoint's rental practices in response to those complaints. It surveyed and inspected dwelling units at the Villa Bella Apartments. It then developed an education and outreach plan to counteract defendants' discriminatory practices and promote its mission.  It diverted time and resources from other complaints and projects to provide each household at the Villa Bella Apartments with fair housing materials about the rights and responsibilities, including the distribution of materials prepared by the California Department of Civil Rights.

**C. Defendants' Pattern or Practice of Unlawful Housing Practices**

106.   Defendants have engaged in a pattern or practice of discrimination. Each has committed unlawful housing practices.  For practices committed before June 1, 2023, the Bathishes – defendants Awni Bathish and Hiam Bathish, individually and as trustees of their trust – are solely responsible. For unlawful practices committed after June 1, 2023, by Broadpoint, defendants Broadpoint Properties, Inc., Javier Zavala, and Melissa Zavala, individually and in her capacity as Broadpoint's licensed officer/broker – are directly liable and the Bathishes are vicariously liable.

107.   At the time that Broadpoint assumed management of the Villa Bella Apartments, each dwelling was occupied by a Latino household; most tenants were monolingual Spanish speakers. Since assuming management, Broadpoint, Melissa Zavala, Javier Zavala, and their agents and employees have subjected each individual plaintiff's household to a wide variety of unlawful housing practices for the purpose and with the effect of discriminating on the basis of national origin, disability, or familial status, as further described below.

*1. Speaking Spanish ~ Writing English*

108.   Broadpoint holds itself out to the public as a bilingual rental property manager. Melissa Zavala and Javier Zavala speak English and Spanish fluently.

109.   Broadpoint knows that the principal language spoken within each individual plaintiff's household is Spanish; it also knows that individual plaintiffs Garcia, Gonzalez, Avila, Gutierrez, Osorio, and Leon are monolingual Spanish speakers.

110.   When communicating demands and requests to the individual plaintiffs, Broadpoint routinely communicates in Spanish.

111.   Despite its knowledge and practice, Broadpoint provides every individual plaintiff's household with documents that create rights and obligations solely in English.  Broadpoint uniformly provides tenancy documents in English only knowing that most of the individual plaintiffs cannot read or understand those documents.

112.   Broadpoint fails or refuses to make any exception to its practice of providing English-only documents in spite of specific requests by individual plaintiffs for translation or statements by individual plaintiffs that they cannot read the documents that Broadpoint demands they execute.

### *2. The Broadpoint Standard, English-only, 59+ page Rental Agreement*

113.   Broadpoint required that each individual plaintiff household executed its Broadpoint Standard, English-only, 59+ page Rental Agreement. Each of these agreements became effective on August 1, 2023, and each provided a month-to-month tenancy to each individual plaintiff's household.

114.   The Broadpoint Standard Rental Agreement is comprised of two sets of forms. The agreement includes several fillable forms published by the California Association of Realtors (CAR) and other non-fillable forms created or adopted by Broadpoint.

115.   The CAR forms included in the Broadpoint Standard Agreement are:

- •      Residential Lease or Month-To-Month Rental Agreement (CAA Form RLMM, Revised 6/23);
- •      Bed Bug Disclosure (CAR Form BBD, Revised 6/23);

1  • Tenant Flood Hazard Disclosure (CAR Form TFHD, Revised
2  6/23)

3  • Rent Cap and Just Cause Addendum (CAR Form RCJC,
4  Revised 6/23);

5  • Fair Housing and Discrimination Advisory (CAR Form FHDA,
6  Revised 6/23);

7  • Lead-Based Paint and Lead-Based Paint Hazards Disclosure,
8  Acknowledgment and Addendum (CAR Form LPD, 12/21);

9  • Lease/Rental Mold and Ventilation Addendum (CAR Form
10  LRM, Revised 6/23); and,

11  • Addendum No. 1 (CAR From ADM, Revised 12/21).

12  116.  The other forms included in the  Broadpoint Standard Agreement are:

13  • Resident Benefits Package (RBP Flyer);

14  • Resident Benefits Package Lease Addendum;

15  • Broadpoint Tenant Handbook;

16  • Information on Dampness and Mold for Renters in California
17  (CDPH 2021); and,

18  • Resident Parking Policies Addendum.

19  117.  Broadpoint required each individual plaintiff to execute each of these
20  forms or face eviction from their homes. Broadpoint inserted terms in the
21  Residential Lease or Month-To-Month Rental Agreement that imposed new
22  charges and obligations on each tenant, including the individual plaintiffs:

23  • Increasing the monthly rent for every household to $1,100;

24  • Charging $40 per month for parking and an additional $75 for a
25  second parking space; and,

26  • Charging a late fee in the sum of 5% of the total monthly rent if a
27  tenant pays their rent on the fourth of the month or later;

28  • Requiring each tenant obtain liability insurance in an amount not less

than $100,000 and name the Bathishes and Broadpoint as additional insured parties.

118.   The Addendum No. 1 imposed more obligations and additional monthly charges on tenants, including each individual plaintiff:

- Waiving any insurance subrogation rights or claims against the Bathishes and Broadpoint or their insurers;

- Charging each household that failed to upload proof of renters insurance an additional monthly fee of $40.95 for a Resident Benefits Package (with renters insurance);

- Compelling any tenant who is forced to relocate their dwelling due to conditions or conduct caused by defendants to seek reimbursement from her renter's insurance; and only if the claim is made and denied will defendants consider reimbursing the tenant; and,

- Imposing an additional monthly utility fee of $150, which must be paid by the tenant as part of rent on the first of the month.

119.   The Resident Benefits Package Lease Addendum imposed more charges, fees, and penalties on tenants, including the individual plaintiffs:

- Charging each household $30 per month for a Resident Benefits Package without insurance and $40.95 per month for a Resident Benefits Package with renter's insurance;

- Assessing a liquidated lease violation penalty of $25 if Broadpoint determines a tenant's insurance is insufficient or lapsed; and,

- Promising to provide services to tenants that are already required of a landlord under state law.

120.   The Broadpoint Tenant Handbook imposed several new obligations, fees, charges, and penalties on tenants, including the individual plaintiffs:

- Shifting Broadpoint and the Bathishes' obligation to perform routine

-23-

1     repairs and maintenance onto tenants;

2     •     Restricting the nature of political posters that a tenant may display

3           within or from her dwelling;

4     •     Imposing a wide variety of arbitrary and excessive fees and penalties

5           for services ordinarily performed – or required to be performed – by

6           landlords, including:  3- Day Notice - $75; Accidental Lock Out Fee -

7           $50; Admin Fee - $75/hr; [New] tenant placement fee - $495; Cancel

8           Lease After Signed Lease - $250; Document Printing Fee - $10 per

9           request; In-Person Signing Fee- $75/hour; Spanish Translation Fee -

10          $75/hour; Inspection to Confirm Cure - $75; Later Move-In Date Fee

11          - $100; Lease Modification Fee - $100; Lease Renewal Fee - $75; No

12          Access/No Show Fee - $85 plus any applicable fee from vendor;

13          Posting Notices - $75; Rental Reference Request - First request is

14          free/ $25 for each additional request; Replacement Key Fee - $50;

15          Walk Thru Move-In Fee - $75 (Weekend Walk-thru is $125).

16    121.   Broadpoint also imposes a variety of arbitrary fees and penalties that

17    are not disclosed in the Broadpoint Standard, English-only, 59+ page Rental

18    Agreement on tenants, including individual plaintiffs:

19    •     Broadpoint authorizes tenants to pay their rent via its company's epay

20          portal, but charges tenants, including individual plaintiffs, a

21          "convenience fee" of $2.95 in connection with each payment;

22    •     Broadpoint charges arbitrary "administrative fees" for performing

23          activities that result from its own negligence.

24         ***3.  The Broadpoint's Qualification Criteria or Rental Standards***

25    122.   Broadpoint employs qualification criteria and rental approval

26    standards to new applicants as well as existing tenants who ask to transfer to

27    another unit within the Villa Bella Apartments. This practice has the purpose or

28    effect of discriminating against families with children and Latino families.

123.   Broadpoint advertises and enforces a two-person per unit occupancy limitation, which discriminates against families with children, especially Latino families. Within the San Diego housing market, families with children, especially Latino families, are typically larger than families without children or non-Latino families.

124.   Broadpoint also utilizes Insight, a third-party vendor, to evaluate the qualifications of new or transferring households.   Neither Broadpoint nor its Insight disclose the weighs accorded each factors for determining rental qualification.  Accordingly, on information and belief, plaintiffs allege that criteria employed by Broadpoint or Insight or both have a disparate impact based on national origin or familial status or both and that defendants lack a sufficient, valid, nondiscriminatory reason to justify the exclusionary effect of their qualification criteria.

### 4.      Denial of Requests for Reasonable Accommodations.

125.   Defendants fail or refuse to grant requests for reasonable accommodation or engage in an interactive process, and impose prohibitive costs as a condition of granting those accommodations.

### 5.      Broadpoint's Discriminatory Advertisement

126.   Broadpoint advertises vacant dwellings for rent at the Villa Bella Apartments in a manner that has the purpose or effect of excluding or discouraging families with children and Latino households.

127.   Broadpoint solely advertises online and only in English.  Its advertisements explicitly state that occupancy in a Villa Bella unit is limited to two persons.

### 6.      Defendants' Unlawful Rent Increases

128.   Each defendant is subject to the rent restrictions imposed under the state's Tenant Protection Act and each has violated that Act's restrictions. Rent includes all charges or expenses to be met or defrayed by a tenant in exchange for

use of the rented property. The gross rental rate charged to a tenant may not increase more than 10% over the course of any 12-month period.  The combined increase in monthly expenses imposed by defendants on tenants, including the individual plaintiffs, exceeds the 10% cap.

### 7.    *Defendants Use Flat-Fee Utility Charges to Gouge Tenants and Circumvent Caps on Rental Increases*

129.   The 15 dwelling units that comprise the Villa Bella Apartments have one master meter that records the whole building's use of water and sewer services provided by the City of Oceanside.

130.   Under the Bathishes' rental agreement, the Bathishes expressly agreed that they would be responsible for all utility costs. Nonetheless,  the Bathishes demanded, charged, and collected a monthly fee of $100 and then $125 for water and sewer service from each tenant household.

131.   Since assuming management, Broadpoint has increased that monthly fee to $150, a sum far in excess of the actual costs charged defendants by the City:

| Billing Period | City Bill: Total | City Bill Per Unit | Excess Collected (15x150) = $2,250 |
|---|---|---|---|
| 6/2/23-7/4/23 | $1,136.43 | $1,136.43/15 = $75.76 | $2,250-$1,136.43 = $1,113.57 |
| 7/4/23-8/7/23 | $1,307.37 | $1,307.37/15 = $87.15 | $2,250-$1,307.37 = $942.63 |
| 8/3/23-9/4/23 | $1,298.38 | $1,298.38/15 = $86.55 | $2,250-$1,298.38 = $951.62 |
| 9/4/23-10/3/23 | $1,280.38 | $1,280.38/15 = $85.35 | $2,250-$1,280.38 = $969.62 |
| 10/3/23-11/2/2023 | $1,145.42 | $1,145.42/15 = $76.36 | $2,250-$1,145.42 = $1104.58 |

### 8. *Broadpoint's Unlawful Termination of Tenancies*

132. After serving unlawful rent increases on the individual plaintiffs and then compelling them to execute the Broadpoint Standard, English-only, 59+ page Rental Agreement, Broadpoint served 60-day notices terminating the tenancy of every Latino household whose tenancies predated Broadpoint's management. Between June and October 2023, Broadpoint served notices to terminate the tenancies of each individual plaintiff, claiming that tenants must vacate so that defendants can substantially remodel their dwellings.

133. Under state law, the right of a landlord to evict a tenant who is without fault is limited to specific circumstances: First, an intent by the landlord to vacate the dwelling so that the landlord's family can move in. Second, the withdrawal of the dwelling from the rental market. Third, issuing of a government order compelling the landlord to vacate the dwelling. Fourth, an intent by the landlord to demolish the dwelling. Last, applicable here, an intent by the landlord to substantially remodel the dwelling.

134. To meet the last condition – "substantial remodel" – the landlord must demonstrate that the remodel involves:

[a] replacement or substantial modification of any **structural, electrical, plumbing, or mechanical system** that [b] requires a permit from a governmental agency, or [c] the **abatement of hazardous materials**, including lead-based paint, mold, or asbestos, in accordance with applicable federal, state, and local laws, that [d] cannot be reasonably accomplished in a safe manner with the tenant in place **and** that requires the tenant to vacate the residential real property for at least 30 days. Cosmetic improvements alone, including painting, decorating, and minor repairs, or other work that can be performed safely without having the residential real property vacated, do not qualify as substantial rehabilitation.  Cal. Civ. Code 1946.2(b)(2)(D)(ii).

-27-

135.   Broadpoint served two series of 60-day notices; each claimed that a household must vacate their home within 60 days to allow defendants to undertake "substantial remodel" of the tenant's unit.   The first series of these notices were served between June and September 2023 on Saenz, Gonzalez, and Leon, as well as three other Latinx households (who vacated and are not named as plaintiffs). None of these notices met the requirements of state law: No defendant obtained a building permit in connection with these notices, a prerequisite to invoke this basis for terminating a tenancy.

136.   The second series of 60-day notices were issued on October 30, 2023, on Valderrama, Garcia, Avila, Gutierrez, Villicana, and Osorio, as well as one other Latinx household (who vacated and is not named as a plaintiff).   Broadpoint attached to each notice a contract for the proposed remodeling that specified a scope of work.  That scope of work does **not** involve the "replacement or substantial modification of any structural, electrical, plumbing, or mechanical system" or "abatement of hazardous materials."   Instead, the work to be performed may be readily completed within 30 days and fits within the definition of "cosmetic improvements," such as painting and replacement of fixtures and appliances.

### *9.   Substandard dwellings*

137.   The Bathishes failed or refused to maintain rental dwellings at the Villa Bella Apartments in conformity with state habitability standards.

138.   As a result of the Bathishes' failure or refusal, the Bella Villa dwellings were allowed to deteriorate to the point where defendants now use their own neglect as the basis for claiming (falsely) that every individual plaintiff's household must be dislocated from their homes to remodel their dwelling to a habitable condition.

### D.  Injuries and Relief

139.   Defendants, and each of them, have engaged in a pattern or practice

of discrimination and unlawful housing practices. As a result of their unlawful conduct, each defendant injured each individual plaintiff, causing them emotional distress, including humiliation, mental anguish and attendant bodily injury, violation of their civil rights, loss of dignity, embarrassment, and other personal or bodily injuries. Each individual plaintiff also suffered breach of the quiet enjoyment of their dwellings and invasion of their private right of occupancy, depriving each of them of the full use and enjoyment of their dwellings. Each individual plaintiff also suffered the loss of an important housing opportunity. Accordingly, each individual plaintiff is entitled to compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c) and their supplemental state law claims.

140.   As a result of their unlawful acts or practices alleged herein, each defendant injured CSA by frustrating its mission and forcing it to divert its scarce resources to address and counteract defendants' ongoing discrimination. To address that discrimination, CSA committed staff time and resources to counseling defendants' victims. It also committed staff time and resources to investigating the actions being taken by defendants. CSA has worked to counteract the discriminatory effect of defendants' unlawful practices. In the absence of defendants' misconduct, CSA would have devoted its scarce time and resources to other activities, including education and outreach regarding other fair housing matters and assisting other victims of discrimination. Accordingly, CSA is entitled to compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c) and its supplemental state law claims.

141.   Defendants, and each of them, committed the unlawful housing practices alleged in this complaint with oppression, fraud, and malice, or with wanton and conscious or reckless disregard for each plaintiff's fair housing rights. Accordingly, each plaintiff is entitled to punitive damages under the Fair Housing Act, 42 U.S.C. § 3613(c), and their supplemental state law claims, Cal. Civ. Code § 3294 and Cal. Govt. Code § 12989.

142.   There now exists an actual controversy between the parties regarding their rights and duties. Accordingly, each plaintiff is entitled to declaratory relief under the Fair Housing Act, 42 U.S.C. § 3613(c) and Rule 57 of the Federal Rules of Civil Procedure as well as their supplemental state law claims.

143.   Unless enjoined, defendants, and each of them, will continue to engage in the unlawful housing practices described in this complaint. Plaintiffs have no adequate remedy at law. They are now suffering and will continue to suffer irreparable injury as a result of defendants' misconduct unless relief is provided by this Court. Accordingly, each plaintiff is entitled to injunctive relief under the Fair Housing Act, 42 U.S.C. § 3613(c), and Rule 65 of the Federal Rules of Civil Procedure as well as their supplemental state law claims.

## VI.  CLAIMS FOR RELIEF

### A.  FIRST CLAIM FOR RELIEF

**(Fair Housing Act :  By all Plaintiffs against all Defendants)**

144.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

145.   Each defendants, directly or acting through agents, injured each plaintiff in violation of the Fair Housing Act by committing one or more of the following discriminatory housing practices:

a.   Denying or otherwise making unavailable a dwelling because of national origin and familial status in violation of 42 U.S.C. § 3604(a);

b.   Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of national origin and familial status in violation of 42 U.S.C. § 3604(b);

c.   Making, printing or publishing or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination

based on national origin and familial status or an intention to make any such preference, limitation, or discrimination in violation of 42 U.S.C. § 3604(c);

d.      Inducing or attempting to induce, for profit, any person to rent any dwelling by representations regarding the entry or prospective entry into the neighborhood or building of persons of a particular national origin or familial status in violation of 42 U.S.C. § 3604(e); or,

e.      Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the federal Fair Housing Act in violation of 42 U.S.C. § 3617.

146.   Plaintiffs will prove that each defendant is liable for violations of the Fair Housing Act under the disparate treatment or disparate impact theories or both. 24 C.F.R. § 100.5.  Plaintiffs will also prove that each defendant is liable for violations of 42 U.S.C. § 3604(c) and (e) under the ordinary listener or reader theory.

147.   Each defendant is directly or vicariously liable for the discriminatory housing practice under this claim pursuant to 24 C.F.R. § 100.7.

148.   Accordingly, each plaintiff is an aggrieved person, 42 U.S.C. § 3602(i), entitled to relief, 42 U.S.C. § 3613(a), according to proof, 42 U.S.C. § 3613(c).

**B.  SECOND CLAIM FOR RELIEF**

**(Reasonable Accommodation under Fair Housing Act:**

**Avila, Gonzalez, Leon against all Defendants)**

149.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

150.   Gonzalez, Avila, and Leon are persons with disabilities – or associated with persons with disabilities – under the Fair Housing Act, 42 U.S.C.

§§ 3602(h), 3604(f)(1) & (2).

151.   Defendants, directly or through their agents, injured Gonzalez, Avila, and Leon in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3), by refusing their requests for reasonable accommodations as follows:

a.      Broadpoint refused to grant Gonzalez's request for a reasonable accommodation for additional time to relocate her disabled son but only if Gonzalez acquiesced to unlawful terms and conditions;

b.      First Bathishes and then Broadpoint refused to grant Avila's request for a reasonable accommodation to relocate to a first-floor unit but only if Avila acquiesced to unlawful terms and conditions; and,

c.      Broadpoint refused to grant Leon's request for a reasonable accommodation to relocate to a first-floor unit but only if Leon acquiesced to unlawful terms and conditions.

152.   Each of these requests for reasonable accommodation was necessary to ameliorate the effect of disability so that Gonzalez, Avila, and Leon are afforded an equal opportunity to use and enjoy their dwellings.

153.   Each defendant is directly or vicariously liable for the discriminatory housing practice under this claim pursuant to 24 C.F.R. § 100.7.

154.   Accordingly, Gonzalez, Avila, and Leon are aggrieved persons, 42 U.S.C. § 3602(i), entitled to relief, 42 U.S.C. § 3613(a), according to proof, 42 U.S.C. § 3613(c).

## C.  THIRD CLAIM FOR RELIEF

**(Fair Employment and Housing Act: All Plaintiffs against all Defendants)**

155.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

156.   Each defendants, directly or acting through agents, injured each plaintiff in violation of the Fair Employment and Housing Act (FEHA) by committing each of the following unlawful housing practices:

-32-

a.     Discriminating against or harassing any person because of national origin or familial status in violation of Cal. Govt. Code § 12955(a);

b.     Making, printing, or publishing, or causing to be made, printed, or published, any notice, statement, or advertisement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on national origin or familial status in violation of Cal. Govt. Code § 12955(c);

c.     Violating the Unruh Civil Rights Act, Cal. Civ. Code § 51, by discriminating against any person on the basis of national origin or familial status in violation of Cal. Govt. Code § 12955(d);

d.     Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts or practices declared unlawful under FEHA, or attempting to do so in violation of Cal. Govt. Code § 12955(g);

e.     Inducing, for profit, any person to rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of persons of a particular national origin or familial status in violation of Cal. Govt. Code § 12955(h);

f.     Otherwise making unavailable or denying a dwelling because of national origin or familial status in violation of Cal. Govt. Code § 12955(k);

g.     Discrimination through private land use practices and decisions because of national origin or familial status in violation of Cal. Govt. Code § 12955(l); and,

h.     Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Employment and Housing Act in violation of Cal. Govt. Code § 12955.7.

-33-

1   157.   Plaintiffs will prove that each defendant is liable for violations of
2   FEHA under the disparate treatment or disparate impact theories or both, Cal.
3   Govt. Code §§ 12955.8, 12955.6.  Plaintiffs will also prove that each defendant is
4   liable for violations of Cal. Govt. Code § 12955(c) & (h) under the ordinary
5   listener or reader theory. 2 C.C.R. §§ 12050-52.

6   158.   Each defendant is directly or vicariously liable for the discriminatory
7   housing practices alleged under this claim pursuant to 2 C.C.R. § 12010.

8   159.   Accordingly, each plaintiff is an "aggrieved person," Cal. Govt. Code
9   § 12927(g), entitled to relief, Cal. Govt. Code § 12989.1, according to proof, Cal.
10  Govt. Code § 12989.2.

11  **D.  FOURTH CLAIM FOR RELIEF**
12  **(Reasonable Accommodation under FEHA:**
13  **Avila, Gonzalez, Leon against all Defendants)**

14  160.   Plaintiffs reallege and incorporate by reference each preceding
15  paragraph herein.

16  161.   Gonzalez, Avila, and Leon are persons with disabilities – or
17  associated with persons with disabilities – under FEHA, Cal. Govt. Code §§
18  12926, 12955.3.

19  162.   Defendants, directly or through their agents, injured Gonzalez, Avila,
20  and Leon in violation of FEHA, Cal. Govt. Code §§ 12927, 12955  by refusing
21  their requests for reasonable accommodations as follows:

22  a.   Broadpoint refused to grant Gonzalez's request for a reasonable
23       accommodation for additional time to relocate her disabled son but only if
24       Gonzalez acquiesced to unlawful terms and conditions;

25  b.   First Bathishes and then Broadpoint refused to grant Avila's request
26       for a reasonable accommodation to relocate to a first-floor unit and then but
27       only if Avila acquiesced to unlawful terms and conditions; and,

28  c.   Broadpoint refused to grant Leon's request for a reasonable

1    accommodation to relocate to a first-floor unit but only if Leon acquiesced

2    to unlawful terms and conditions.

3        163.   Each of these requests for reasonable accommodation was necessary

4    to ameliorate the effect of disability so that Gonzalez, Avila, and Leon are

5    afforded an equal opportunity to use and enjoy their dwellings.

6        164.   Each defendant is directly or vicariously liable for the discriminatory

7    housing practices alleged under this claim pursuant to 2 C.C.R. § 12010.

8        165.   Accordingly, each plaintiff is an "aggrieved person," Cal. Govt. Code

9    § 12927(g), entitled to relief, Cal. Govt. Code § 12989.1, according to proof, Cal.

10   Govt. Code § 12989.2.

11                    **E.  FIFTH CLAIM FOR RELIEF**

12   **(Unruh Civil Rights Act ~ By Individual Plaintiffs against all Defendants)**

13       166.   Plaintiffs reallege and incorporate by reference each preceding

14   paragraph herein.

15       167.   Each defendants, directly or acting through agents, injured each

16   individual plaintiff in violation of the Unruh Civil Rights Act, Cal. Civ. Code §

17   51, by discriminating in the operation of the Bella Villa Apartment or Broadpoint,

18   business establishments, on the basis of personal characteristics.   The individual

19   plaintiffs will prove that each defendant is liable, 2 C.C.R. § 12010, for violation

20   of the Unruh Civil Rights Act under a disparate treatment theory, 2 C.C.R. §§

21   12040-12042.

22       168.   Accordingly, each individual plaintiff is an aggrieved party, Cal. Civ.

23   Code § 52(e), entitled to relief according to proof pursuant to Cal. Civ. Code §

24   52(a), including civil penalties for each statutory violation.

25                    **F.  SIXTH CLAIM FOR RELIEF**

26                **(Tenant Harassment, Cal. Civ. Code:**

27           **By Individual Plaintiffs against all Defendants)**

28       169.   Plaintiffs reallege and incorporate by reference each preceding

1  paragraph herein.

2  170.   Each defendants, directly or acting through agents, injured each

3  individual plaintiff in violation of Cal. Civ. Code § 1940.2 by committing one or

4  more of the following unlawful practices:

5  a.   Engaging in conduct that violates the Cal. Penal Code § 484

6  (Larceny);

7  b.   Engaging in conduct that violates the Cal. Penal Code § 518

8  (Extortion); or,

9  c.   Engaging in willful threats that interfere with a tenant's quiet

10  enjoyment.

11  171.   Accordingly, each individual plaintiff is entitled to relief according to

12  proof pursuant to Cal. Civ. Code § 1940.2(b), including civil penalties for each

13  violation.

14  **G.  SEVENTH CLAIM FOR RELIEF**

15  **(Substandard Conditions, Cal. Civ. and Health & Safety Codes:**

16  **By Individual Plaintiffs against the Bathishes)**

17  172.   Plaintiffs reallege and incorporate by reference each preceding

18  paragraph herein.

19  173.   Defendants Awni Bathish and Hiam Bathish, individually and as

20  trustees of Bathish Revocable Living Trust, injured each individual plaintiff in

21  violation of Cal. Civ. Code §§ 1941, 1941.1, or 1941.3 by committing one or more

22  of the following unlawful practices:

23  a.   Failing to maintain dwelling units in accordance with the

24  requirements of Cal. Health and Safety Code §§ 17920.10 or 17920.3; or

25  b.   Demanding or collecting rent for occupancy of a dwelling whose

26  condition violated the requirements of Cal. Civil Code §§1941, 1941.1, or

27  1941.3 or Cal. Health and Safety Code §§ 17920.10 or 17920.3 or the

28  common law duty of habitability.

1    174.   Accordingly, each individual plaintiff is entitled to relief according to
2    proof pursuant to Cal. Civ. Code §§ 3281, 3333, and 3294.

3    ### H.  EIGHTH  CLAIM FOR RELIEF

4    **(Nuisance, Cal. Civ. Code:   By Individual Plaintiffs**

5    **against the Bathishes)**

6    175.   Plaintiffs reallege and incorporate by reference each preceding
7    paragraph herein.

8    176.   Defendants Awni Bathish and Hiam Bathish, individually and as
9    trustees of Bathish Revocable Living Trust, injured each individual plaintiff in
10   violation of Cal. Civ. Code §§ 3479-3481 by committing one or more of the
11   following unlawful acts:

12   a.   Creation and maintenance of a public nuisance in violation of Cal.
13   Civ. Code §§ 3479-3480; or,

14   b.   Creation and maintenance of a private nuisance in violation of Cal.
15   Civ. Code §§ 3479-3481.

16   177.   Accordingly, each individual plaintiff is entitled to relief according to
17   proof pursuant to Cal. Civ. Code §§ 3491, 3493, and 3501.

18   ### I.  NINTH CLAIM FOR RELIEF

19   **(Quiet Enjoyment, Cal. Civ. Code:  By Individual Plaintiffs**

20   **against all Defendants)**

21   178.   Plaintiffs reallege and incorporate by reference each preceding
22   paragraph herein.

23   179.   Each defendant, directly or acting through agents, injured each
24   individual plaintiff in violation of Cal. Civ. Code § 1927 by committing one or
25   more of the following unlawful practices:

26   a)   Breach of the covenant of quiet enjoyment;

27   b)   Invasion of the private right of occupancy; or,

28   c)   Wrongful constructive eviction.

180.   Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to Cal. Civ. Code §§ 3281, 3333, and 3294.

### J.  TENTH CLAIM FOR RELIEF

**(Termination of Utilities, Cal. Civ. Code: Gonzalez v. all Defendants)**

181.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

182.   Defendant Javier Zavala injured Gonzalez by threatening to terminate utilities services to her dwelling unit in violation of Cal. Civil Code §§ 789.3, 1927, and 1940.1.

183.   Each defendant is directly or vicariously liable for Javier Zavala's misconduct.

184.   Accordingly, Gonzalez is entitled is relief according to proof pursuant to Cal. Civ. Code §§ 789.3, 3281, 3333, and 3294.

### K.  ELEVENTH  CLAIM FOR RELIEF

**(Statutory Negligence, Cal. Civ. Code:**

**By Individual Plaintiffs  against all Defendants)**

185.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

186.   Broadpoint, Javier Zavala, and Melissa Zavala injured each individual plaintiff in violation of Cal.Civ. Code § 1714 by beaching the following statutory duties in the course of their management of the Bella Villa Apartments:

a.     Threatening the individual plaintiffs with eviction in violation of Cal. Civ. Code § 1946.2;

b.     Imposing and collecting an unlawful rent increase in violation of Cal. Civ. Code § 1947.12;

c.     Imposing, threatening, and collecting liquidated fees, costs, and penalties pursuant to the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1671;

d.      Imposing and collecting excessive fees and charges for utilities in violation of Cal. Civ. Code § 1709-1711, among other statutes;

e.      Imposing and collecting unauthorized fees and charges in violation of Cal. Civ. Code § 1709-1711, among other statutes;

f.      Failing and refusing to provide a Spanish language translation of rental agreements in violation of Cal. Civ. Code § 1632;

g.      Representing that fees and charges are non-refundable, in whole or part, in violation of Cal. Civ. Code § 1950.6, among other statutes;

h.      Imposing unenforceable material terms in the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code §§ 1709-1711, among other statutes, Bureau of Consumer Financial Protection, Compliance Bulletin, 87 Fed. Reg. 17,143, 17,144 (Mar. 28, 2022);

i.      Violating their duty to supervise agents and employees to ensure compliance with statutes governing DRE licensing in violation of Cal. Bus. Prof. Code §§ 10159, 10211, 10159.2;

j.      Engaging in discriminatory housing practices explicitly prohibited by DRE regulations, 10 CCR § 2780;

k.      Restricting the right of the individual plaintiffs pursuant to the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1940.4; and,

k.      Other statutory or regulatory duties governing landlords, managers, and DRE licensees.

187.   Broadpoint, Javier Zavala, and Melissa Zavala are directly liable for committing these violations. Awni Bathish and Hiam Bathish, individually and as trustees of Bathish Revocable Living Trust, are vicariously liable for the violations committed by their agents, Broadpoint, Javier Zavala, and Melissa Zavala.

188.   Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to Cal. Civ. Code §§ 3281, 3333, and 3294.

## L.  TWELFTH CLAIM FOR RELIEF

### (Unfair Business Practices, Cal. Bus. & Prof. Code:

### By Individual Plaintiffs against all Defendants)

189.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

190.   Each defendant, directly or acting through agents, injured each individual plaintiff, causing them to lose property or money, in violation of Cal. Bus. & Prof. Code § 17200 by committing the following unlawful, unfair, and fraudulent business practices:

a.      Violation of the Fair Housing Act, FEHA, and the Unruh Civil Rights Act, as alleged herein;

b.      Violation of Cal. Civ. Code  §§ 789.3, 1927, 1941, 1941.1, or 1941.3 1940.2, and 3479-3481, as alleged herein;

c.      Threatening the individual plaintiffs with eviction in violation of Cal. Civ. Code § 1946.2;

d.      Imposing and collecting an unlawful rent increase in violation of Cal. Civ. Code § 1947.12;

e.       Imposing, threatening, and collecting liquidated fees, costs, and penalties pursuant to the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1671;

f.      Imposing and collecting excessive fees and charges for utilities in violation of Cal. Civ. Code § 1709-1711, among other statutes;

g.      Imposing and collecting unauthorized fees and charges in violation of Cal. Civ. Code § 1709-1711, among other statutes;

h.      Failing and refusing to provide a Spanish language translation of rental agreements in violation of Cal. Civ. Code  § 1632;

i.      Representing that fees and charges are non-refundable, in whole or part, in violation of Cal. Civ. Code § 1950.6, among other statutes;

j.      Imposing unenforceable material terms in the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code §§ 1709-1711, among other statutes, Bureau of Consumer Financial Protection, Compliance Bulletin, 87 Fed. Reg. 17,143, 17,144 (Mar. 28, 2022);

k.      Violating their duty to supervise agents and employees to ensure compliance with statutes governing DRE licensing in violation of Cal. Bus. Prof. Code §§ 10159, 10211, 10159.2;

l.      Engaging in discriminatory housing practices explicitly prohibited by DRE regulations, 10 CCR § 2780;

m.      Restricting the right of the individual plaintiffs pursuant to the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1940.4; and,

n.      Other statutory or regulatory duties governing landlords, managers, and DRE licensees.

191.   As a result of defendants' unlawful, unfair, and fraudulent business practices, each individual plaintiff has suffered injury in fact and lost money or property. Accordingly, each is entitled to restitution, according to proof, and an order enjoining defendants' unlawful, unfair, and fraudulent business practices. Cal. Bus. & Prof. Code §§ 17202-17204.

## M.  THIRTEENTH  CLAIM FOR RELIEF

### (Recession, Cal. Civ. Code:

### By Individual Plaintiffs  against all Defendants)

192.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

193.   Each individual plaintiff is entitled to recession of the Broadpoint Standard Rental Agreement executed by each and Broadpoint because of the unlawful, unfair, or deceptive practices committed by defendants or their agent, including:

a.     The inclusion of unlawful provisions in the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1667;

a.     The inclusion of provisions contrary to public policy in the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1668;

c.     The inclusion of unconscionable provisions in the Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1670.5;

d.     The failure or refusal of defendants or their agents to provide a Spanish language translation of the  Broadpoint Standard Rental Agreement in violation of Cal. Civ. Code § 1632; and,

e.     The commission of duress, menace, and fraud by defendants or their agents in compelling the execution of the Broadpoint Standard Rental Agreement by each individual plaintiff in violation of Cal. Civ. Code §§ 1567-1568, 1569-1575.

194.   Accordingly, each individual plaintiff is entitled to rescind or reform the Broadpoint Standard Rental Agreement pursuant to Cal. Civ. Code § 1689, on terms deemed just by this Court pursuant to  Cal. Civ. Code § 1692.

## N.  FOURTEENTH  CLAIM FOR RELIEF
### (Negligence, Cal. Civ. Code:
### By Individual Plaintiffs  against Batish Defendants)

195.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

196.   Defendants Awni Bathish and Hiam Bathish, individually and as trustees of Bathish Revocable Living Trust, injured each individual plaintiff in violation of Cal. Civ. Code 1714 by want of ordinary care or skill in the management of their property, including failure to supervise their agents, Broadpoint, Javier Zavala, and Melissa Zavala, by want of ordinary care or skill.

197.   As a result of the Bathishes' want of care or skill, each individual

-42-

plaintiff suffered bodily injury and personal injury, including invasion of their private right of occupancy and constructive, wrongful eviction from their dwellings.  Accordingly, each is entitled to compensatory damages pursuant to Cal. Civ. Code §§ 3281, 3333.

## V.  PRAYER FOR RELIEF

Therefore, plaintiffs, and each of them, pray for entry of a judgment:

1.     That declares that each defendant is liable for the commission of the unlawful acts or practices in violation of the federal and state statutes invoked in this complaint;

2.     That enjoins each defendant, including her partners, agents, employees, assignees, and all persons acting in concert or participating with her, from committing any of the unlawful acts or practices alleged in this complaint or proven in this action;

3.     That requires each defendant, including her partners, agents, employees, assignees, and all persons acting in concert or participating with her, to undertake affirmative steps to remedy the effects of the unlawful acts or practices alleged in this complaint or proven in this action;

4.     That rescinds or reforms the rental agreements executed by the individual plaintiffs;

5.     That awards restitution damages to each individual plaintiff, according to proof;

6.     That awards compensatory damages to each individual plaintiff, according to proof;

7.     That awards punitive damages to each plaintiff, according to proof;

8.     That awards statutory damages or civil penalties, as provided by statute;

9. That awards attorneys' fees, costs, and expenses to each plaintiff; and,

-43-

1        10. That grants all such additional relief to which any plaintiff is entitled.

2                                     Respectfully submitted,

3        Dated:   November 7, 2023.

4

| LEGAL AID SOCIETY OF SAN DIEGO, INC. | BRANCART & BRANCART |
|---|---|
| Hilary Schwartz | */s/ Christopher Brancart* |
| *hilarys@lassd.org* | Christopher Brancart |
| 110 South Euclid Avenue, | cbrancart@brancart.com |
| San Diego, California 92114 | Elizabeth Brancart |
| Tel:   (619) 471-2613 | *ebrancart@brancart.com* |
| | Post Office Box 686 |
| Attorney for Plaintiff Basilides Cuevas Leon | Pescadero, CA 94060 |
| | Tel:   (650) 879-0141 |
| | Attorneys for Plaintiffs |